**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regional Care Services Corporation, an Arizona corporation; Regional Care Services Corporation Health and Welfare Employee Benefit Plan,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>Companion Life Insurance Company,<br><br>　　　　　Defendant. | No. CV-10-2597-PHX-LOA<br><br>**ORDER** |

　　　This matter is before the Court on the motion of Plaintiffs Regional Care Services Corporation and Regional Care Services Corporation Health and Welfare Employee Benefit Plan (the "Employee Benefit Plan") for summary judgment pursuant to Fed.R. Civ.P. 56, doc. 85, and on the motion of Defendant Companion Life Insurance Company ("Defendant" or "Companion") for summary judgment pursuant to Fed.R.Civ.P. 56, doc. 87. Both motions are fully briefed and ripe for review. Each side requests oral argument. Because oral argument would not aid the court's decisional process, the request is denied. *Mahon v. Credit Bur. of Placer County, Inc*., 171 F.3d 1197,1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily, oral argument is not required).

　　　All parties have consented to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 10-11)  After considering the briefing and applicable law, the Court will

1   grant summary judgment in favor of Plaintiffs, deny Defendant's Motion for Summary

2   Judgment, and enter related orders.

3   **I. Background and Factual Findings**

4          This is a diversity action, pursuant to 28 U.S.C. § 1332, involving the Employee

5   Benefit Plan's payment of medical expenses incurred by the adopted daughter, M.F.G., a

6   minor,[1] of Dr. John and Jessica Gietzen. Plaintiffs assert that they should be reimbursed

7   under a stop-loss insurance contract in an amount in excess of $274,000 for medical

8   claims above the $150,000 deductible which were incurred during the 2009 calendar year

9   on behalf of M.F.G.  Companion Life argues that it is not contractually obligated to

10  reimburse Plaintiffs for claims paid on M.F.G.'s behalf because M.F.G. did not qualify as

11  an eligible dependent under the Employee Benefit Plan, and because the Plan Adminis-

12  trator did not have substantial evidence to support M.F.G.'s plan eligibility as of March

13  30, 2009, the date of the eligibility determination.

14         Regional Care is an Arizona corporation with its principal place of business in

15  Casa Grande, Arizona. It provides health care benefits to its employees through Regional

16  Care Services Corporation Health and Welfare Employee Benefit Plan, a self-funded

17  employee benefit plan under the Employee Retirement Income Security Act ("ERISA").

18  (PSOF ¶¶ 1-2[2])  Regional Care contracted with Companion, a South Carolina corporation,

19  to issue a medical stop-loss insurance policy (the "Stop-Loss Contract" or the "Policy")

20  for the period January 1, 2009 through December 31, 2009. (Doc. 2; doc. 86-3 at 2,7[3])

21  _____

22         [1] The Court refers to the minor, born in November 1995, doc. 96-1 at 11, as "M.F.G."

23  to safeguard her privacy interests as required by Rule 5.2(a)(3), Fed.R.Civ.P., "[a] rule that
    establishes a special approach and procedure for granting juvenile anonymity during

24  litigation." *Doe ex rel. Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 625 F.3d
    1182, 1187 (9th Cir. 2010) (Chief Judge Kozinski dissenting from denial of *en banc* review).

25

26         [2] Citations to "PSOF ¶", are to Plaintiffs' Separate Statement of Facts in Support of
    Motion for Summary Judgment, doc. 86.

27         [3] Citations to "Doc. 86-3" are to Exhibit 3 (Stop-Loss Contract) attached to Plaintiffs'

28  Separate Statement of Facts in Support of Motion for Summary Judgment ("PSOF"), doc.

Under the Policy, Companion pays for covered medical expenses of eligible employees that exceed $150,000 up to a maximum of $1,850,000. (*Id*. at 3)

The Stop-Loss Contract provides coverage to "plan participants" defined as "an employee, dependent or any other person who is eligible and who is covered under the Employee Benefit Plan." (*Id*. at 11)  The Stop-Loss Contract specifies that dependents are defined "as a dependent under the Employee Benefit Plan." (*Id*. at 9)  The Employee Benefit Plan is defined as "the master plan document of the Contractholder to provide medical expenses to the Contractholder's covered plan participants and dependents of such plan participants in effect on the Effective Date of this Contract, a copy of which is attached to this Contract." (Doc. 86-3 at 10)  The Contractholder is identified as Regional Care Services Employee Benefit Plan. (*Id*. at 7, 9)  The Contract is defined as "the entire agreement between the Contractholder and the Company, specifically including the Contract Application, the Contract Form, the Contract Addenda (if any), and a copy of the Contractholder's Employee Benefit Plan." (*Id*. at 9)

Regional Care's Employee Benefit Plan describes the coverage and eligibility requirements for its employees who receive medical benefits. The Employee Benefit Plan includes, in pertinent part, the following definition of dependent:

**Eligible Classes of Dependents:** A dependent is any one of the following persons:

1.  A covered employee's spouse, life partner, and unmarried children from birth to the limiting age of nineteen (19) years . . . .

The dependent children must rely on the covered employee for over one-half of their support (as described in Section 152 of the Internal Revenue Code).

* * *

The term "children" shall include natural children living in the same household as the employee, *adopted children* or children placed with a covered employee in anticipation of adoption. Step-children who reside in the employee's household may also be included as long as a natural parent remains married to the employee and also resides in the employee's household.

* * *

---

86.

1

2   The phrase "child placed with a covered employee in anticipation of adoption" refers to a child whom the employee intends to adopt, whether or not the adoption has become final, who has not attainted the age of eighteen (18) as of the date of such placement for adoption. The term "placed" means the assumption and retention by such employee of a legal obligation for total or partial support of the child in anticipation of adoption of the child. The child must be available for adoption and the legal process must have commenced.

3

4

5   Any child of a participant who is an alternate recipient under a qualified medical child support order shall also be considered as having a right to dependent coverage under this Plan.

6

7   A participant of this Plan may obtain, without charge, a copy of the procedures governing qualified medical child support order (QMCSO) determinations from the plan administrator.

8

9   The *plan administrator may* require documentation proving dependency, including birth certificates, tax records or initiation of legal proceedings severing parental rights.

10

11   (Doc. 86-1 at 17[4])

12   During the relevant period, Dr. John Gietzen was a participant in the Employee

13   Benefit Plan. Companion argues that Dr. Gietzen was not a covered employee under the

14   Employee Benefit Plan, and therefore, his adopted daughter was not an eligible

15   dependent. (Docs. 87 at 16-17; 102 at 14)  On January 26, 2011, however, Companion

16   made a binding admission, under Fed.R.Civ.P. 36(b), that Dr. Gietzen was an eligible

17   Plan participant. (Doc. 86-2, PSOF, Exh. 2, No. 1 at 3)  A matter admitted under Rule

18   36(b) is "conclusively established unless the court, *on motion*, permits the admission to be

19   withdrawn." Fed.R.Civ. P. 36(b) (emphasis added).  Rule 36(b) is permissive, not

20   mandatory, with respect to the withdrawal of admissions. *See Asea, Inc. v. S. Pac. Transp.*

21   *Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981). Rule 36(b) permits the district court to exercise

22   its discretion to grant relief from an admission made under Rule 36(a) only when (1) "the

23   presentation of the merits of the action will be subserved," and (2) "the party who

24   obtained the admission fails to satisfy the court that withdrawal or amendment will

25   prejudice that party in maintaining the action or defense on the merits." *Conlon v. United*

26

27   [4]  Citations to "Doc. 86-1" are to Exhibit 1 (Regional Care Services Corporation Employee Benefit Plan Document) attached to Plaintiffs' Separate Statement of Facts in Support of Motion for Summary Judgment ("PSOF"), doc. 86.

28

1   *States*, 474 F.3d 616, 621 (9th Cir. 2007) (citing Fed.R.Civ. P. 36(b)); *see also Carney v.*

2   *IRS* (*In re Carney*), 258 F.3d 415, 419 (5th Cir. 2001) ("[A] deemed admission can only

3   be withdrawn or amended by motion in accordance with Rule 36(b)."). The district court

4   is directed to exercise caution in permitting the withdrawal of an admission. *Conlon*, 474

5   F.3d at 621.

6          Companion raised the issue of Dr. Gietzen's eligibility under the Employee

7   Benefit Plan for the first time in its Motion for Summary Judgment, filed December 30,

8   2011. (Doc. 87 at 16) ("Maria Gietzen was not covered under the Plan because Dr.

9   Gietzen himself was not a covered employee under the Plan. . . ."). Companion revisited

10  that issue in its Reply in Support of its Motion for Summary Judgment, doc. 107 at 9, and

11  in its Response to Plaintiffs' Motion for Summary Judgment, doc. 102 at 14. Inexplicably,

12  Companion has never filed a motion to withdraw its admission regarding Dr. Gietzen.

13  Companion inserts a footnote on the second to last page of its Reply in Support of its

14  Motion for Summary Judgment, requesting the Court "consider this argument as a motion

15  that the Court allow [Companion] to amend its earlier admission to conform to the new

16  evidence." (Doc. 107 at 11, n. 6) (The complete footnote states: "To the extent that a

17  motion is required, Companion respectfully requests this Court consider this argument as

18  a motion that the Court allow it to amend its earlier admission to conform to the

19  evidence.") Clearly, a footnote buried in a reply in support of a dispositive motion does

20  not constitute a separate motion. As a practical matter, Companion asks the Court to rule

21  on a footnote, which it declines to do. Had Companion wanted to file a motion to

22  withdraw its admission about Dr. Gietzen, it easily could have done so. Companion states

23  that Dr. Gietzen produced his tax return to Companion in June 2011. (Doc. 107 at 10)

24  Companion further states that "[i]t was not until Companion's counsel began preparing

25  for Defendant's expert disclosures due in September 2011 that it became apparent from

26  the 2009 tax return that Dr. Gietzen was actually employed by the Physician's Group, a

27  separate corporate entity, was not an employee of Regional Care, and was therefore not a

28  covered Plan Participant." (Doc. 107 at 10) Although Companion's counsel does not

identify the date on which he became aware of the possibility that Dr. Gietzen was not a covered Plan Participant, relying on the dates in Defendant's pleading, it was as early as June 2011 and no later than September 2011. (Doc. 107 at 10)  Companion does not explain why it did not file a motion to withdraw the admission regarding Dr. Gietzen's eligibility under the Plan upon discovering the issue regarding his employment. Indeed, despite being aware of this issue since, at the latest, September 2011, Companion has never filed a proper motion to withdraw its admission that Dr. Gietzen was an eligible Employee Benefit Plan participant. The Court declines to speculate why Companion has never filed a motion to withdraw its admission. Because Companion failed to proceed in the procedurally proper manner, it is bound by its admission. Moreover, it is highly unlikely the Court would grant a motion to withdraw the admission now in view of the procedural posture of this case, *i.e.*, discovery closed on November 30, 2011, nearly five months ago, and dispositive motions have been pending for months. (Doc. 17)  Although Companion knew as early as June 2011 that Dr. Gietzen might not be an eligible Employee Benefit Plan participant, it never moved to withdraw its admission to the contrary. Rather, Companion waited until after discovery closed to raise the issue in its Motion for Summary Judgment and still failed to proceed in a procedurally appropriate manner. Plaintiffs relied on the admission for several months, through the discovery and dispositive motion cut-off dates, with no indication that Companion intended to file a motion to withdraw Dr. Gietzen's admissions. *But see, Perez v. Miami-Dade County,* 297 F.3d 1255, 1268 (11th Cir. 2002) (finding no prejudice, in part, because Perez had relied on the admissions for *only six days*); *Raiser v. Utah County*, 409 F.3d 1243, 1247 (10th Cir. 2005) ("*Only two weeks* passed between the due date for Mr. Raiser's response and the date that he filed his initial motion to amend his admissions or allow an untimely response.") (emphasis added).

As stated above, during the relevant period, Dr. John Gietzen was a participant in the Employee Benefit Plan. M.F.G. is the adopted daughter of Dr. Gietzen and his wife, Jessica Gietzen. (PSOF ¶ 28)  M.F.G. was diagnosed with cancer at age 13, requiring

1    extensive medical treatment between January 1, 2009 and December 31, 2009. (PSOF ¶¶

2    32- 35) The Employee Benefit Plan paid $424,181.01 for that treatment. (PSOF ¶ 35)

3    Plaintiffs contend that Companion owes the Employee Benefit Plan $274,181.01 for

4    M.F.G.'s medical expenses in excess of $150,000.00. (PSOF ¶¶ 35, 36, 52)

5        The Plan Administrator, Rona Curphy, determined that M.F.G. was an eligible

6    dependent. (PSOF ¶¶ 15, 37-38)  In March 2009, the Employee Benefit Plan's third-party

7    administrator, AmeriBen, raised questions about M.F.G.'s eligibility because she no

8    longer resided with Dr. Gietzen, and was under a guardianship arrangement with Maria

9    Torres in Florida. (PSOF ¶ 37)  The Gietzens provided their 2008 income tax return,

10    which claimed M.F.G. as a dependent, as evidence that they provided one-half to

11    M.F.G.'s support. (PSOF ¶ 38)  Curphy reviewed the Employee Benefit Plan and con-

12    cluded that: the Gietzens provided one-half of M.F.G.'s support; the guardianship

13    arrangement with Torres did not disqualify M.F.G. as a dependent under the Employee

14    Benefit Plan; and the Employee Benefit Plan did not require adoptive children to reside in

15    the employee's home. (PSOF ¶ 38)  The Employee Benefit Plan, through its third-party

16    administrator, AmeriBen, submitted a claim to Companion under the Stop-Loss Policy for

17    benefits paid for M.F.G.'s medical care in excess of the Stop-Loss Policy's $150,000

18    deductible. (PSOF ¶ 39)  The initial proof of loss was submitted on June 11, 2009. (PSOF

19    ¶ 40; doc. 86, Exh. 11)  At the request of Companion's underwriter, Matrix, the Employee

20    Benefit Plan submitted documentation concerning M.F.G.'s status as Dr. Gietzen's

21    adopted daughter, and the support Dr. Gietzen provided for her. (PSOF ¶ 42)

22        On March 22, 2010, Companion, through its underwriter, denied the claim on the

23    ground that "the eligibility requirements of the Plan, based upon the enrollment informa-

24    tion provided, are not met." (PSOF ¶ 49; doc. 86, Exh. 17)  Plaintiffs appealed that

25    determination, and Companion again denied the claim, explaining that "the intent of the

26    Plan Document is that for each category of the requirements of IRS Code 152 must be

27    met." (PSOF ¶ 51)

28        Plaintiffs filed a complaint in the Maricopa County Superior Court on November

1
2
3
4
5

2, 2010, alleging one count of breach of contract under state law and requesting compensatory damages, prejudgment and post-judgment interest, attorneys' fees and costs. (Doc. 1-1, Exh. B at 8-15)  Companion timely removed the action to this District Court on December 2, 2010. (Doc. 1) The parties later filed the pending cross-motions for summary judgment.

6

**II.  Governing Law**

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A district court must grant summary judgment if the pleadings and supporting documents,  viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial.  *Celotex*, 477 U.S. at 323.  The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. However, "[t]he evidence of the non-movant is to be believed, and all justifiable

1   inferences are to be drawn in his [or her] favor." *Id.* at 255 (citing *Adickes v. S.H. Kress &*

2   *Co.*, 398 U.S. 144, 158-59 (1970)).

3       The Employee Benefit Plan at issue is governed by ERISA, 29 U.S.C. § 1001, *et seq.*

4   Although an ERISA plan provides the backdrop for this case, ERISA preemption, an issue

5   the parties do not address, does not apply to this breach-of-contract action between an

6   insured, Regional Care's Employee Benefit Plan, and its stop-loss insurer, Companion, to

7   determine whether coverage exists under a stop-loss policy for claims paid by Regional Care.

8   Although ERISA preempts state laws to the extent they "relate to" any employee benefit

9   plan, 29 U.S.C. § 1144(a), the Supreme Court has found that "[m]uch of state tort and

10  contract law isn't preempted." *General Am. Life Ins. Co. v. Casonguay*, 984 F.2d 1518, 1522

11  (9th Cir. 1993). The Ninth Circuit has also recognized that ERISA "[d]oesn't purport to

12  regulate those relationships where a plan operates just like any other commercial entity - for

13  instance, the relationship between . . . the plan and its own insurers . . . ." *Id.*; *see also*

14  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082-83 (9th Cir. 2009). Thus, preemption does not

15  apply to a dispute between a self-insured employer and its reinsurer, such as the one before

16  the Court.

17      This matter is before the Court pursuant to its diversity jurisdiction. A federal court

18  sitting in diversity applies the choice-of-law rules of the state in which it sits. *Fields v.*

19  *Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005); *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

20  313 U.S. 487, 496 (1941). Thus, Arizona's choice-of-law rules apply in this case. "Arizona

21  courts apply the Restatement to determine the applicable law in a contract action." *Swanson*

22  *v. Image Bank, Inc.*, 206 Ariz. 264, 77 P.3d 439, 441 (2003). The relevant contracts in this

23  case do not contain explicit choice-of-law provisions, so the contractual rights and duties of

24  the parties are governed by the law of the state having "[t]he most significant relationship to

25  the parties and the transaction." *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207,

26  841 P.2d 198, 202 (Ariz. 1992) (citing Restatement (Second) Conflict of Laws § 188 (1971)).

27  Here, Regional Care is an Arizona corporation with its principal place of business in Arizona,

28  the medical treatment at issue was provided in Arizona, and the Stop-Loss Policy was

obtained to provide coverage for Regional Care's Arizona employees. Plaintiffs and Defendant do not argue that Arizona law does not apply.  On the existing record, the Court concludes that Arizona has the most significant relationship to the parties and the contract. The Court will apply Arizona law.

The interpretation of an insurance contract is a question of law to be determined by the court.[5] *Sparks v. Republic National Life*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (Ariz. 1982). The provisions of an insurance contract are interpreted according to their plain and ordinary meaning. *National Bank of Arizona v. St. Paul Fire and Marine Insurance Co.*, 193 Ariz. 581, 584, 975 P.3d 711, 713 (Az.Ct.App. 1999)  "[T]o determine the meaning of a clause which is subject to different interpretations or constructions, [courts] examin[e] the purpose of the clause, public policy considerations, and the transaction as a whole." *Arizona Property & Casualty Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 134-35, 735 P.2d 451, 456-57 (Ariz. 1987); *see also Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355, 694 P.2d 181, 185 (Ariz. 1984). To determine whether an ambiguity exists, the court examines the contract language from the viewpoint of one not trained in law or in the insurance business. *National Bank*, 193 Ariz. at 583, 975 P.2d at 713.

_____

[5] After initially failing to comply with Rule 56(e), Companion subsequently submitted the signed affidavit of expert witness Kathy A. Steadman, incorporating by reference her Rule 26 report submitted with Companion's Statement of Facts. (Doc. 88-2, Exh. A 2-24; 108-2 at 2-3) She is an attorney licensed in Arizona who practices primarily in the area of state and federal insurance regulatory law. (Doc. 88-2, Exh. A at 2)

Assuming *arguendo* that Companion presented Ms. Steadman's opinions in a procedurally proper manner, her legal opinions and conclusions do not assist the Court on issues of law and are inadmissible. Rule 702, Fed.R.Evid. Testimony on ultimate issues is not permitted when it consists of legal conclusions or opinions. *Nationwide Transport Finance v. Cass*, 523 F.3d 1051,1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."); *see also Donelson v. Providence Health & Services-Washington*, 2011 WL 4899911, (E.D.Wash. October 14, 2011) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004)). Ms. Steadman's legal opinions and conclusions are excluded *sua sponte*.

**III. Analysis**

Plaintiffs argue that, because the Employee Benefit Plan, which was incorporated into the Stop-Loss Policy, vested the Plan Administrator with the full and final authority to interpret the Plan, the Plan Administrator's eligibility determination is final and binding. Conversely, Companion argues that focusing on the Employee Benefit Plan "misses the mark," because the "operative document" is the Stop-Loss Contract. (Doc. 102 at 3)  Companion is correct that the Stop-Loss Contract governs the contractual relationship between Plaintiffs and Companion in this case. However, Companion's attempt to consider the Stop-Loss Contract as wholly separate in isolation from the Employee Benefit Plan, ignores the plain language of the Stop-Loss Contract which, specifies that the

> Contract means the entire agreement between the Contractholder and the Company, specifically including the Contract Application, the Contract Form, the Contract Addenda (if any), and a copy of the **Contractholder's Employee Benefit Plan.**

(Doc. 86-3 at 9) (emphasis added).  The Contractholder is identified as Regional Care Services Employee Benefit Plan. (*Id.* at 7, 9)  The Stop-Loss Contract is the "operative document," for determining the dispute in this case, and, by its own terms, the Employee Benefit Plan. The Stop-Loss Contract defines the Employee Benefit Plan as "the master plan document of the Contractholder to provide medical expenses to the Contractholder's covered plan participants and dependents of such plan participants in effect on the Effective Date of this Contract, a copy of which is attached to this Contract." (Doc. 86-3 at 10)  The interconnectedness of the Employee Benefit Plan and the Stop-Loss Contract is evidenced by the Stop-Loss Contract's adoption of the Employee Benefit Plan's definitions of crucial terms. For example, the Stop-Loss Contract provides coverage to "plan participants" defined as "an employee, dependent or any other person who is eligible and who is covered under the Employee Benefit Plan." (*Id.* at 11)  The Stop-Loss Contract also specifies that dependents are defined "as a dependent under the Employee Benefit Plan." (*Id.* at 9)  The Court will consider the entire agreement as defined in the

Stop-Loss Contract to determine whether Companion was required to reimburse Plaintiffs for the relevant medical expenses, and thus, breached the Stop-Loss Contract by failing to do so.

As Plaintiffs argue, the Tenth Circuit's decision in *Zurich North America v. Matrix Services, Inc.*, 426 F.3d 1281 (10th Cir. 2005), which involves facts strikingly similar to this case, is persuasive authority. In *Zurich*, a medical stop-loss insurer sued an employer for breach of contract, seeking return of funds the insurer paid for medical expenses of an employee on the ground that the employee was not a qualified participant under the ERISA plan ("benefit plan"). As in this case, the stop-loss policy incorporated the benefit plan. *Id*. at 1284. The benefit plan granted the "sole discretionary authority to determine eligibility for plan benefits or to construe the terms of the plan," to a Health Benefit Committee. *Id*. at 1288. The appellate court rejected the stop-loss insurer's argument that the Health Benefit Committee's authority only extended to disputes with the employees, not the stop-loss insurer. *Id.* The court also rejected the stop-loss insurer's claim that the employer's Health Benefit Committee's eligibility decision constituted a revision to the benefit plan requiring the insurer's approval. *Id.*  Rather, the court found that the Health Benefit Committee "did not rewrite or modify the contract provisions. It merely inter-preted the Plan's language including any attendant ambiguity as it applied to an employee." *Id.*  The Tenth Circuit held that the stop-loss insurer was bound by the employer's interpretation of the benefit plan, where the plan and the provision granting the employer's Health Benefit Committee the sole authority to interpret the plan and construe its provisions which were incorporated into the stop-loss policy. *Id.*  The Tenth Circuit further found that the employer's interpretation of the benefit plan was supported by three factors: (1) the benefit plan granted the employer's Health Benefit Committee "the sole power to interpret the provision of the Plan;" (2) the Health Benefit Commit-tee's interpretation was reasonable in view of the plain language of the relevant plan provision; and (3) because under the controlling state law, insurance contracts are construed against the insurer. *Zurich*, 426 F.3d at 1288.

As in *Zurich*, the Employee Benefit Plan, which is specifically incorporated into the Stop-Loss Policy, grants the Plan Administrator the sole authority to interpret and construe the provisions of the Employee Benefit Plan. The Plan Administrator's determinations "are final and binding on all interested parties." (Doc. 86-1 at 60)  The Employee Benefit Plan specifically provides that:

> It is the express intent of this Plan that the *plan administrator* shall have the maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a *participant's* rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decision of the *plan administrator* will be final and binding on all interested parties.

(Doc. 86-1 at 60) (emphasis in original). The Plan Administrator is specifically responsible for construing and interpreting the terms of the Plan and making eligibility determinations. Again, as in *Zurich*, the Stop-Loss Policy specifically incorporates the Employee Benefit Plan into the agreement between Companion and Regional Care. (PSOF ¶ 7)  Here, the Stop-Loss Policy specifically refers to the Employee Benefit Plan to define participant and dependent. (PSOF ¶¶ 8-10, 18, 19)  As such, Companion contractually agreed that the Plan Administrator's determinations regarding eligibility are final and binding.

Companion argues that it is not an "interested party" as the phrase is used in the Employee Benefit Plan document. (Doc. 102 at 8)  Rather, Companion argues that the Employee Benefit Plan addresses the rights and responsibilities of the Plan Administrator, beneficiaries, and participants. (*Id*.)  Thus, the phrase "interested parties" refers to participants and beneficiaries, and does not include the stop-loss carrier. (*Id*.)  The Court disagrees. Again, the Stop-Loss Policy incorporates the Employee Benefit Plan, which includes all of its provisions. By so doing, the stop-loss carrier, Companion, became an "interested party" as used in the Benefit Plan. The phrase is not limited to beneficiaries or participants and states that "[t]he decision of the *plan administrator* will be final and binding on all interested parties." (Doc. 86-1 at 60) (underlining added, italics in original).

Companion also asserts that it has the authority to independently determine eligibility under the Stop-Loss Policy. (Doc. 102 at 4)  The Stop-Loss Policy provides that Companion "[w]ill pay, subject to the terms, conditions and limitations of the Contract, the following benefits . . . to the Contractholder within a reasonable time upon receipt of a fully executed Proof of Loss." (Doc. 86-3 at 11)  The Stop-Loss Policy defines "proof of loss as

> the form authorized by the Company to be used for the submission of claims as well as the supporting documentation reasonably necessary for the Company's independent evaluation of the legitimacy and extent of the claim.

(*Id.*)

At first glance, these provisions appear to conflict with the provision of the Benefit Plan that gives the Plan Administrator the final and binding authority to construe and interpret the Employee Benefit Plan. The Stop-Loss Policy specifically states that benefits will be paid "subject to the terms, conditions and limitations of the Contract," and, as previously discussed, the Contract includes the Employee Benefit Plan. (Doc. 86-3 at 9) Thus, while the Stop-Loss Policy authorizes Companion to "evaluat[e] the legitimacy and extent of the claim," it does not override the Plan Administrator's authority to "determine" eligibility. Merriam-Webster's Dictionary defines "determine" as "to fix conclusively or authoritatively . . . to come to a decision about by investigation [or] reasoning." www.merriam-webster.com (last visited on April 22, 2012). "Evaluate" is defined as "to determine or fix the value of" or "to determine the significance, worth, or condition of usually by careful appraisal or study." *Id.*  While these two words seem similar, they are not synonymous, the word "determine" connotes more authority and finality of a decision. *Id.*

The construction of an insurance contract is a question of law. *Coombs v. Lumberman's Mut. Cas. Co.*, 23 Ariz. App. 207, 209, 531 P.2d 1145, 1147 (Az.Ct.App. 1975). A court construes the contract as a whole, to give a "reasonable and harmonious meaning and effect to all of its provisions." *Tritschler v. Allstate Ins. Co.*, 231 Ariz. 505, 511, 144 P.2d 519, 525 (Az.Ct.App. 2006). The Court agrees with Plaintiffs that, when applying

these principles, the word "evaluate" is limited to verifying whether the Proofs of Loss and supporting documentation show that: (1) the Plan Administrator had determined that the Plan participant is eligible; and (2) that the Plan has paid benefits sufficiently in excess of the deductible to trigger stop-loss coverage. Considering the plain meaning of the words "evaluate" and "determine," in light of the Stop Loss Policy's specific incorporation of the Employee Benefit Plan, the Court rejects Companion's argument that it has the authority to independently determine eligibility and override the Plan Administrator's determination.

Even if the Plan Administrator's determination should be reviewed for an abuse of discretion, Companion has not shown an abuse of discretion in this case. While this is not an ERISA case, and simply a state-law contract case, ERISA case law is instructive. The Supreme Court has held that an abuse-of-discretion standard applies to benefit decisions under ERISA plans which give plan administrators discretion to determine benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (reiterating the standard of review as the deferential abuse of discretion standard where the ERISA plan provides the adminis-trator or fiduciary discretionary authority to determine eligibility for benefits) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). Under the abuse-of-discretion standard, the denial of benefits must be upheld unless the decision was arbitrary and capricious. *Barnett v. Kaiser Found. Health Plan*, 32 F.3d 413, 416 (9th Cir. 1994). The "touchstone of 'arbitrary and capricious' conduct is unreasonableness." *Id.* An ERISA plan administrator may abuse its discretion by: (1) making a decision without an explanation; (2) construing provisions of the plan in a manner that conflicts with the plain language of the plan; or (3) relying upon clearly erroneous findings of fact in making benefit determinations. *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1323–24 (9th Cir. 1995).

In a case similar to the one at bar, an Iowa district judge reviewed a plan adminis-trator's approval of a benefits claim for an abuse of discretion. In *Computer Aided Design Sys. Inc. v. Safeco Life Ins. Co.*, the court held that Safeco breached its contractual

obligation to plaintiff by refusing to pay the excess loss claim because plaintiff did not abuse its discretion as plan administrator when it approved its plan participant's claim for benefits. *Computer Aided Design Sys. Inc*., 235 F.Supp.2d 1052, 1062 (S.D.Iowa 2002), *aff'd by* 358 F.3d 1011 (8th Cir. 2004). There, the insurance policy term at issue read: "[S]AFECO 'will reimburse you for a percentage of the amount of covered expenses you have paid for covered persons under your plan.'" *Id*. at 1058. The policy also incorporated the Plan. *Id*. at 1060. The plan stated that the administrator "*shall have discretionary authority to determine whether and to what extent participants and beneficiaries are entitled to benefits, and to construe disputed or doubtful Plan terms*," and "shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder by acting arbitrarily and capriciously." *Id*. at 1060 (emphasis in original). The court held that because the policy incorporates the plan and the plan gave plaintiff discretion to make benefits determinations, Safeco would be treated like a plan bene-ficiary and would bear the burden of proving that plaintiff abused its discretion in approving the claim at issue. *Id*. at 1060-61. The court determined that the plan adminis-trator's approval of the claim was reasonable, *i.e.* supported by substantial evidence, and therefore, Safeco's denial of the claim was a breach of its contractual obligation. *Id*. at 1061-62.  The district court's decision was affirmed on appeal. 358 F.3d 1011, 1013 (8th Cir. 2004) ("We conclude that the Plan Administrator did not abuse his discretion when he made the decision to cover Lynda Solomon's claim. . . Substantial evidence - the opinion of Plaines Health, the opinion of Dr. Gingrich, combined with the other informa-tion submitted by the University and Solomon - supported the Plan Administrator's decision to extend coverage to Solomon. We find this decision was reasonable and not an abuse of discretion.").

Similar to *Computer Aided Design*, the Employee Benefit Plan in this case, which is incorporated into the Stop-Loss Policy, gives the Plan Administrator the sole discretion to make eligibility determinations and to construe terms of the Plan. As discussed above, Companion has not identified any provision of the Stop-Loss Policy that gives it the right

to overrule the Plan Administrator's eligibility determinations. Thus, relying on ERISA case-law principles for guidance, the Court finds that to deny coverage, Companion must show that the Plan Administrator abused her discretion in determining that M.F.G. was a covered dependent under the Plan. In other words, Companion must establish that it was unreasonable for the Plan Administrator to conclude that M.F.G. was eligible for coverage under the Employee Benefit Plan when her medical expenses arose.

As an initial matter, the Court notes that Companion asserts that the Plan Administrator had a conflict of interest which increases the amount and type of evidence that must support her decision. (Doc. 87 at 13)  It is true that a plan administrator who acts as both a plan administrator and a self-insurer has a structural conflict of interest: since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965-67 (9th Cir. 2006) (*en banc*); *Tremain v. Bell Indus., Inc*., 196 F.3d 970, 976 (9th Cir. 1999). An argument of structural conflict, however, is not relevant to this case because the Plan Administrator found the plan participant eligible to receive benefits and is seeking reimbursement from its stop-loss insurer. *See Montour v. Hartford Life & Acc. Insurance Co.*, 588 F.3d 623, 633 (9th Cir. 2009) (providing guidance for applying the abuse-of-discretion standard in conflict-of-interest scenarios). Thus, to the extent the Court finds ERISA case law instructive, the "more complex analysis" applicable to a plan administrator's eligibility determination when an alleged conflict of interest exists does not apply. *Id.* at 630.

Based on a review of the governing provisions of the Employee Benefit Plan, the Court finds that the Plan Administrator's eligibility determination was reasonable. The critical provision of the Employee Benefit Plan is the definition of "dependent" which provides:

> **Eligible Classes of Dependents:** A *dependent* is any one of the following persons:
>
> 1.  A covered *employee's* spouse, life partner, and unmarried children from birth to the limiting age of nineteen (19) years . . . .

- 17 -

The dependent children must rely on the covered *employee* for over one-half of their support (as described in Section 152 of the Internal Revenue Code).

* * *

The term "children" shall include natural children living in the same household as the *employee*, adopted children or children placed with a covered *employee* in anticipation of adoption. Step-children who reside in the *employee's* household may also be included as long as a natural parent remains married to the *employee* and also resides in the *employee's* household.

* * *

The phrase "child placed with a covered *employee* in anticipation of adoption" refers to a child whom the *employee* intends to adopt, whether or not the adoption has become final, who has not attainted the age of eighteen (18) as of the date of such placement for adoption. The term "placed" means the assumption and retention by such *employee* of a legal obligation for total or partial support of the child in anticipation of adoption of the child. The child must be available for adoption and the legal process must have commenced.

(Doc. 86-1 at 17) (emphasis in original).

The parties' dispute regarding whether M.F.G. qualifies as a dependent turns on the requirement that the employee provide one-half of a dependent's support, and whether the definition of children requires an adopted child, such as M.F.G., to live in the same household as the employee (the "residency requirement"). The Court first turns to the residency requirement for an adopted child.

The Plan Administrator concluded that the Employee Benefit Plan did not require M.F.G. to reside with Dr. Geitzen. The plain language of the Plan supports the Plan Administrator's interpretation. The Employee Benefit Plan defines children as "[n]atural children living in the same household as the *employee*, adopted children or children placed with a covered *employee* in anticipation of adoption. Step-children who reside in the *employee's* household may also be included as long as a natural parent remains married to the employee and also resides in the *employee's* household." (*Id*.) (emphasis in original). Applying ordinary rules of grammar and punctuation, this provision requires natural children to reside with the employee, but does not include a residency requirement for "adopted children or children placed with a covered employee in anticipation of adoption." (*Id*.)  As a general rule, a modifying clause applies only to its immediate

- 18 -

antecedent.  *See Pacificorp. v. Bonneville Power Admin.*, 856 F.2d 94, 97 (9th Cir. 1988)

(citing 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.33 (5th ed. 1992));

*Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 355 (2005) ("[U]nder the

last antecedent rule, 'a limiting clause or phrase . . . should ordinarily be read as modi-

fying only the noun or phrase that it immediately follows.") (citation omitted). Thus, the

phrase "reside with the employee"only applies to the "natural children." This conclusion

is reinforced by the subsequent definition of "children placed with a covered *employee*,"

indicating that adopted children and "placed children" are treated differently than "natural

children." (Doc. 86-1 at 17) (emphasis in original). There is no residency requirement for

"placed children." On the other hand, the Employee Benefit Plan specifically provides

that "[s]tep-children who reside in the *employee's* household," may be considered

children. (Doc. 86-1 at 17) (emphasis in original). The Employee Benefit Plan's specific

use of a residency requirement for natural children and step-children indicates that, when

such a requirement was intended, the Employee Benefit Plan clearly stated it. The

absence of a residency requirement in the portion pertaining to adopted children reason-

ably indicates that no such requirement existed.

 The Court next turns to the provision regarding the amount of support the

employee provides for the adopted child. The Employee Benefit Plan provides that "[t]he

dependent children must rely on the covered *employee* for over one-half of their support

(as described in Section 152 of the Internal Revenue Code)." (Doc. 86-1 at 17)  The

Employee Benefit Plan also provides that "[a]t any time, the Plan *may* require proof that a

. . . child qualifies or continues to qualify as a dependent as defined by the Plan."  (Doc.

86-1 at 18) (emphasis added). The use of the word "may" generally indicates permissive

intent. *Crum v. Maricopa County*, 190 Ariz. 512, 514, 950 P.2d 171, 173 (Az.Ct.App.

1997). Thus, the Plan Administrator was permitted, but not required, to seek proof

regarding whether M.F.G. qualified as a dependent. In determining that M.F.G. was a

covered dependent, the Plan Administrator exercised her discretion to seek proof that Dr.

Gietzen provided over one-half of M.F.G's support. At the time of her March 2009

coverage determination, the Plan Administrator was provided with the Gietzens' 2008 income tax return on which they claimed M.F.G. as a dependent. (PSOF ¶ 38)

As set forth above, the Court finds that the relevant provisions of the Employee Benefit Plan are not ambiguous, and could be reasonably interpreted by considering its plain language. The Plan Administrator exercised her authority to interpret and construe the Plan's language. The Employee Benefit Plan, which is incorporated into the Stop-Loss Policy, specifically provides that the Plan Administrator's decisions are "final and binding on all interested parties." (Doc. 86-1 at 60)  The plain language of the Employee Benefit Plan combined with the Plan Administrator's final and binding authority to construe and interpret the terms and provisions of the Plan and make eligibility determinations lead to the conclusion that Plan Administrator's interpretation in this case is dispositive. Moreover, the Plan Administrator's eligibility determination was reasonable and not an abuse of discretion.

Similar to this case, in *Diversatek, Inc. v. QBE Ins. Co.*, 2010 WL 4941733 (E.D. Wis. Nov. 30, 2010), the chief district judge held that a stop-loss carrier had no right under the stop-loss agreement and the benefit plan document to make eligibility determination. Although this is non-controlling authority, the Court finds it persuasive in view of the factual similarity to the pending matter. Diversatek brought an action, alleging, among other claims, breach of contract based on the reinsurer's denial of claims for reimbursement under an excess-loss policy. *Id.* As in this case, the reinsurer argued that it was not required to pay medical expenses under the employee benefit plan. The employee benefit plan provided that:

> The Plan Administrator . . . has the *sole authority and discretion* to interpret and construe the terms of the Plan and to determine any and all questions in relation to the administration, interpretation or operation of the Plan, including but not limited to, eligibility under the Plan, . . ., and to determine payment of benefits or claims under the Plan and any and all other matters arising under the Plan.

2010 WL 4941733 at * 6 (emphasis added). There, the court found that the stop-loss policy incorporated the employee benefit plan, including the term giving the plan administrator sole authority to make eligibility determinations. *Id.* at * 7. The court found that

whether an employee's medical expenses were plan benefits was Diversatek's "sole responsibility," and that "no term in the [stop-loss] Policy gives [the stop-loss insurer] the right to determine whether [the employee's] claims were covered benefits under the Plan and to deny reimbursement on that basis." *Id*. at * 6. Similar to the stop-loss policy in this case, the policy provided that Divesatek would be reimbursed upon submission of an acceptable proof of loss. *Id*. at * 7.

Companion cites several cases in support of its summary judgment motion. *Behavioral Sciences Institute v. Great-West Life,* 84 Wash.App. 863, 930 P.2d 933 (Wash. App. 1997); *Canada Life Assurance Co. v. Pendelton Memorial Hospital*, 1999 WL 243653 (E.D.La. April 21, 1999); *Clarcor, Inc. v. Madison National Life Insurance Co.*, 2011 WL 2682998 (M.D.Tenn. July 11, 2011). As Plaintiffs note, these cases are distinguishable from the case *sub judice* because none involves an employee benefit plan which grants the plan administrator the sole "final and binding" authority to construe and interpret the plan's provisions to make eligibility determinations. Additionally, these are non-binding authorities from courts outside the State of Arizona.

In *Behavioral Sciences*, a Washington appellate court held that a stop-loss insurer had standing to challenge an employee's eligibility under an employee benefit plan "because the parties' agreement does not provide the employer with absolute discretion." 84 Wash.App. at 865, 930 P.2d at 939-40. The district court in *Canada Life*, 1999 WL 243653 at * 5, agreed with the *Behavioral Sciences* court that the unilateral power of the ERISA plan administrator to bind an excess-loss carrier was unreasonable. Unlike the present case, however, in both *Behavioral Sciences* and *Canada Life*, the plan administrator disregarded express exclusions in the plan. Here, the Employee Benefit Plan does not exclude adoptive children who do not live with the covered employee. (PSOF ¶ 24) The district court in *Computer Aided Design* noted this distinction, stating that "[u]nlike *Behavioral Sciences* and *Canada Life*, the plan administrator here did not use its discretion to disregard express exclusions to plan coverage." *Computer Aided Design*, 235 F.Supp.2d at 1060.

Companion also cites *Clarcor, Inc. v. Madison Nat. Life Ins. Co.*, 2011 WL 2682998 (M.D. Tenn. July 11, 2011). Again, aside from being non-controlling authority from a court outside of Arizona, this case is distinguishable from the case at bar. *Clarcor* did not involve the exercise of discretionary authority by a plan administrator to interpret the employee benefit plan. Rather, it concerned the definition of "losses" or "eligible expenses" under the stop-loss policy which did not include "any payment [by Clarcor] which does not strictly comply with the provisions of the Plan." *Id*. at * 1. In *Clarcor*, the plan administrator lacked the discretionary authority to determine claims or coverage eligibility and, because the stop-loss carrier's liability depended on "strict compliance" with the plan, the court conducted a *de novo* review of the plan's terms and the evidence. *Id*.

Having distinguished the case law cited by Defendants, the Court finds the cases cited by Plaintiffs persuasive. As previously discussed, *Zurich* and *Diversatek* are more similar to the case before the Court. As in those cases, the Employee Benefit Plan, which is incorporated into the Stop-Loss Policy, gives the plan administrator the "final and binding" authority to construe and interpret its terms. Pursuant to the contract into which the parties entered, Companion does not have the authority to challenge the Plan Administrator's eligibility determination. Based on the foregoing, the Court finds that the Plaintiffs have met their burden of proving that coverage for M.F.G.'s claims exist under the Stop-Loss Policy.

**IV.   Conclusion**

In summary, Plaintiffs are entitled to summary judgment as a matter of law and Defendant has not shown the existence of a genuine issue of material fact to warrant a trial.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment, doc. 85, is **GRANTED** and that Defendant's Motion for Summary Judgment, doc. 87, is **DENIED**.

**IT IS FURTHER ORDERED** that, because Plaintiffs pled requests for an award

of "prejudgment and post-judgment interest" on \$274,181.01, and "Plaintiffs' attorneys' fees and costs under A.R.S. § 12-341.01," doc. 1-1 at 14, Plaintiffs must complete the following tasks on or before **Tuesday, May 8, 2012**:

    1. Lodge a proposed Judgment, which must comply with Rule 58, Fed.R.Civ.P., and LRCiv 58.1;

    2. File a separate application for award of prejudgment and post-judgment interest, which must include a memorandum of points and authorities for such awards with clear and specific calculations thereof;

    3. File a separate application for award of reasonable attorneys' fees, costs, and non-taxable expenses, if authorized by law or contract, which must include a memorandum of points and authorities which complies with Rule 54(d)(2), Fed.R.Civ.P.; LRCiv 54.2(b)(1)-(4), (c), (d); and LRCiv 54.1.

    Absent a showing of good cause, Plaintiffs' failure to file timely their applications for award of interest, attorneys' fees, and costs may result in a denial of such award(s).

    **IT IS FURTHER ORDERED** that, because the briefing is adequate and oral argument would not aid the Court, the parties' requests for oral argument are **DENIED**.

    Dated this 24th day of April, 2012.

Lawrence O. Anderson
United States Magistrate Judge